It pleases the Court, Counsel. My name is Nathan Leonardo, representing Mr. Tajma Murphy, the appellant in this case. There are a couple issues that this case raises. The first one is the improper admission of 404B evidence against my client, evidence that he admitted to being recruited and being hired to transport drugs on prior occasions across the border and within the United States. The government moved to admit this evidence in the middle of trial. It was the first time anybody had notice of it. In urging or moving to admit the evidence, they asserted three reasons why it should be admitted. Two of those reasons are improper on their face. And the third reason that these – this evidence is important because it shows why agents talked to Mr. Murphy was simply not material in the case. But the other reasons that it asserted, that it shows that Mr. Murphy had been engaged in illegal behavior and that he was part of an ongoing criminal conspiracy, are precisely the reasons why this type of evidence is not admissible. Sotomayor, it – I am unaware that you actually made a 404B or 403 objection at the time. Well – So wouldn't our review then be for plain error? And on plain error review, at least, isn't it – how can you say that it was obviously wrong to allow the testimony in to explain why the agent was recruiting Murphy to work? I'm not even sure that's 404 evidence anyway. It just kind of goes to explain how all this went down. I know the government urges that the Court reviews this for plain error. I would say that this was unusual in that the government did not do a notice of its intent to admit 404 evidence before the trial, which is normally the case. And it's supposed to be the case, which would have allowed the defense counsel to reply in writing and the Court to do a full analysis. But that didn't happen here. It happened in the middle of trial, I believe, on the second day. So defense counsel and the Court were essentially ambushed with this new information. Defense counsel was not trial counsel, but defense counsel at the time I think was thinking of it as an admission. But it was clear that the Court understood what rule this was being asserted, which rule the government was trying to get this evidence in on, and that was 404B. It stated that it found the evidence admissible under 404B, but it didn't go through the 404B analysis that's normally required. It did not. Ginsburg. I think the difficulty I have is that maybe the Court understood this, but that there was a side issue of conspiracy. You know, in other words, is this going to come in as some evidence of the conspiracy? And that seemed to be what defense counsel was arguing, and that was the basis for the objection. So you kind of have this odd situation of the judge on this level thinking about, I think, 404B, and the defense counsel arguing about conspiracy. So my guess, my question is, when you have that kind of a disconnect and the counsel didn't object, wouldn't that be plain-error review? Well, I think it's – it rewards the government for this sort of ambush tactic, and that is bringing this up in the middle of trial. Well, was that brought up either? The timeliness? No. In terms of, I mean, any need for a continuance or anything else. I mean, this wasn't, like, dramatic. Right. It's one statement that everybody knew about because it was in the report. Correct. It was multiple – well, at least it was testified about twice. But I would – even if it is reviewed under plain-error analysis, it is plain-error, because the court admitted the evidence under 404B but didn't go through the 404B analysis. And, in fact, it was impossible for the court to go through the analysis because, for one, there was no time given. The information was very limited. There was no time from which the court could have possibly concluded that the evidence wasn't too remote. There was – it wasn't material. It was – I was obviously wrong because there was no issue about whether or not the agents talked to the defendant about cooperating or tried to recruit him. But does it – so then if that's the case, then it's almost not prejudicial. Well – In other words, this really kind of just puts the marker down for Stevens, I thought, about how did this whole thing get kicked off. And as Judge Rimer said, you know, it may or may not really even fall in the – you know, the prior act's conduct. But two points that relate to what you said before. You said you didn't think it was relevant. And so I'd like you to address that because it does seem relevant to me. But then, second, how is it prejudicial in light of the other evidence? That seems to me to be the kind of the final line we need to assess. Well, it's not relevant because it's not an element of the crime charged. It's not a disputed material fact. The defense put the government on notice that it was doing a public authority defense. And the whole defense was that the defendant was working on behalf of the agent. So clearly, they talked. Now, the agents testified that they – See, that – I think you might be confusing relevance with cumulative. In other words, if you stipulated to that defense, and the fact is that he's talking to these guys, that is sort of in and of itself relevant, then, wouldn't it be? Well, it may have been relevant. You're just saying that maybe it's prejudicial because this is – it came in this form of testimony as opposed to the stipulation. It may have been relevant to the defense, but the State was presenting that evidence. And the State was presenting the evidence that didn't help its case whatsoever. And there was no dispute about it. The only reason for that evidence to come in on – for the State – or, excuse me, the government – was for the reasons it suggested to the court, and the court rejected. But that was because it shows that the defendant is a criminal and is involved in ongoing criminal conspiracies. And I would say that it's prejudicial because there's a big difference between evidence that shows the defendant discussed this with agents and may have had an agreement to work with agents and saying that not only did that, but he's also done the – run drugs multiple times in the past and is a career criminal. Actually, I mean, this is making kind of too fine a point of it, but he actually didn't say that. I mean, what he actually said was he'd been recruited to drive drugs across and from point to point, which is slightly different from saying he actually did it. It is slightly different, and that's the argument that the government relies on, saying that these weren't bad acts at all. But it's not. No, but I'm – aside from what the government thinks, I'm following up on how prejudicial it is, because what he actually said has to be factored into whether it – you can say that it actually made any difference to the outcome. Well, what he actually said also was, and the agents testified to, was that he was doing it, which to me clearly means that he did – if you were hired to do something, the implication is that you did it. So it's certainly evidence, and I think the normal person, the average juror, would conclude that, yes, he's done this multiple times on multiple occasions, being hired to do this and being recruited to do other things. Well, I thought he also – he disputed that he said that, correct? He did dispute it, which goes to the weight – to the admissibility of that evidence also, because it wasn't reliable. He was trying to impress agents. When he said this, they had mentioned money that he could earn, and so I would argue that that's – that goes against – Did the judge say this wasn't for the truth? Excuse me? Did the judge say this wasn't for the truth? The judge limited his – his admission to just the – that it went to only the discussion  Not to the truth of the evidence. In other words, the judge admitted that this evidence was not probative at all, that certainly it was prejudicial, and that's what I would – why I argue that should not have come in at all. And the judge also wanted to limit the prejudicial impact by giving an instruction – a limiting instruction to the jury, which he never did, at least it's not apparent. And there was no request for a limiting instruction either, was there? Well, no, because the Court said in his ruling that he would be giving one. Oh, at the end, there was not. I know, again, but judges can forget things. Correct. It's like you're not necessarily clairvoyant. They're not necessarily always remembering stuff. And so I'm going to, I guess at this point, try to reserve 30 seconds and submit the 5K1 motion. I'm pretty sure.  Thank you. Good morning. May it please the Court. I'm Beverly Anderson from the United States Attorney's Office from the District of Arizona. May I follow up on the last point with you? You know, the obvious way to cure any problem with respect to arguable 404, 403 problems is to give a limiting instruction, which the judge indicated he would do. So at least at the moment, he recognized that that was the thing to do, but didn't. Correct. So what is your take on how we should factor that in? Your Honor, the perceived harm never occurred. Therefore, there was no limiting instruction that was needed. The Court allowed testimony that the defendant had been recruited and that the defendant had also run drugs. However, as the testimony unfolded, as the testimony came out, the agent testified that the defendant admitted that he had been recruited, never that he had run drugs. In fact, when the defendant took the stand, he steadfastly and adamantly denied that he had ever run drugs in the past. So therefore, because the perceived harm never really never occurred at all, there was no longer any need for any kind of a limiting instruction. The court, the district court did not err, much less plainly err in admitting the evidence that the court is talking about at this point. And I agree with Judge Reimer, this really isn't 404b. There was no error. The error was not plain. And there was no violation of the defendant's substantial rights. Not only that, but what's interesting is that in this case, the evidence almost helped the defendant. The defendant's sole defense in the case was this public authority defense. His defense never was, I didn't run the drugs. His defense at trial was, I did run the drugs, but I was doing it under the public authority. So this evidence that the court admitted and allowed to come in actually bolstered the defendant's defense. There was no prejudice whatsoever to the defense. In fact, this evidence was a critical component of the defendant's defense. If the evidence had not been admitted, the defendant's defense would actually have been a little bit weaker. Because the defendant failed to show any kind of error, because the defendant has failed to show plain error, and finally, because there was no violation of the defendant's substantial rights, this Court should deny this defendant's argument. The next argument that I'd like to address, of course, is the 5K1.1 motion. The district court did not clearly err when it failed to depart downward pursuant to 5K1.1 in the absence of a government motion. The defendant has the burden of proving that the government failed to move for a 5K1.1 departure for improper or unconstitutional motives, and the defendant has failed to do that in this case. At the beginning of the case, the government made a plea offer to the defendant that incorporated a 5K1.1 motion. That plea offer was rejected wholeheartedly by the defendant. The defendant wished to go to trial. At that case, at that situation, the government tried the case as the defendant wished, and this case now is nearly identical to the case of Murphy, which the government has cited in its brief and which was decided by this very court in 1995. In the Murphy case, it clearly holds that the district court lacks authority to grant a downward departure absent a motion by the government unless there is some kind of unconstitutional motive or there was some kind of arbitrary reason not rationally related to a legitimate government interest. And that was the original argument made by the defense based on race and religion? Because that kind of crept into the rather than vindictiveness? Well, the at sentencing, the defense counsel stated that there was nothing improper. The defense attorney made it very clear that he was not accusing the government of any kind of improper motive or any kind of prejudice whatsoever. And the court, in fact, echoed that and made a specific finding at ER 111 and 112 that there was no improper motive on behalf of the government. Nonetheless, the government came in at sentencing and made it clear that the government had no objection to a two-level departure pursuant to 18 U.S.C. 3553. And the court, in fact, came out on the bench and said, you know, I already have this number in mind, and despite what the government is saying, the court imposed the court indicated that they had a sentence of 188 months in mind, and that, in fact, is what the sentence that the defendant received. I'm a little confused. I guess in looking at the transcript, I thought that the defendant actually said that he thought what happened to him was outrageous, and he felt it was because of his race, part of it was because of his religion. And then he talks about how Murphy might think it's an Irish person, but it's not. So I thought that that specifically was argued. On page 117 of the excerpts of record, defense counsel says, Judge, just to clarify the record, I've never accused Ms. Krivda of anything, any racist demeanor. In fact, on my reply, I specifically put there that I did not think she had any kind of such demeanor. So I understand what the court is saying, but there's also the question of whether the defendant had a racist demeanor. And I think that's what the court is trying to say. And I think that's what the court is trying to say, and I think that's what the court is trying to say. But anyway, it seemed to me that it was pretty clearly raised. I think the government made it clear that there was no unconstitutional reason for the lack of 5K1.1 motion in the court. The court also echoed that in its specific finding, that the court did not find that there was any kind of unconstitutional motive that was based on race or religion. How about the fact that he sought a jury trial? The fact that he had wanted a jury to answer the question, would that be a basis to deny the request? Well, no, because, again, this gets us into the realm of the Corey case and also the Murphy case. The Corey case was decided one month before the Murphy case, and in the Murphy case, they actually distinguished themselves from the Corey case. And they said that if the government has a rational interest, a rational reason that is not arbitrary for denying a 5K1.1 to maintain the integrity of the plea process, then it's acceptable for the government to say 5K1.1 is off the table because we're proceeding to trial. In the Corey case, what happened is the government made a plea offer which incorporated a 5K1.1 motion, and then they acknowledged that there was substantial assistance, but then in Corey, the government changed their position and they said, look, if you proceed to trial, then the 5K1.1 is off the table. And that's completely different than what happened in this case. What happened in this case is the government clearly made an offer, 5K1.1, and then that offer was rejected by the defense. The defendant wanted a trial. He was given his trial. And based on legitimate government interests maintaining the plea integrity process, the government, although they did not make a motion pursuant to 5K1.1, the government clearly at sentencing said that they had no objection to the court granting a two-level departure, which, in fact, the court did. So based on the totality of circumstances, there was no prejudice to the defense. It's clear that the government did not act arbitrarily or based on some kind of unconstitutional motive. Based on the record in the case, the government would urge the court to affirm the sentence and conviction. Thank you. Thank you, Ms. Anderson. Mr. Lamarto. All right. I'll try to be very brief. As far as the 404B evidence, the government's argument that it's not prejudicial because no evidence that actually those acts actually occurred was admitted is undercut by its admission on page 21 of its brief that the admissions and the evidence presented was sufficient to prove those acts occurred. As far as the 5K1.1 acts argument, I think the record in this case is unusual in that it's clear. You can tell just from the record the district court had before it clear evidence that the 5K1.1 motion was withheld for improper reasons, and that improper reason was the defendant's decision to go to trial. The government admitted that it was going to make the motion as part of a plea agreement. It couldn't have made that motion had there not been substantial assistance. This wasn't an instance like in those other cases where it was a cooperation plea agreement that required him to cooperate in the future. All the cooperation and assistance had been completed at that time, and then that motion was withdrawn because he decided to go to trial. Okay. Thank you, counsel. The matter just argued will be submitted.
judges: Hug, Rymer, McKeown